HAMITER, Justice.
 

 These petitory actions, tried together in the district court and consolidated and docketed here under the same number, have as their purpose the. establishing of title to a tract of land (approximately 28.8 acres), with the timber thereon, located in Vernon Parish. The allegations of the plaintiffs in both suits are identical, except in one the Meridian Land and Mineral Corporation asserts ownership of the land while in the other the Crowell Long Leaf Lumber Company, Inc., alleges title to the timber. The claim of ownership of each is based on a record title, in a complete and unbroken chain, deraigned from the United States government.
 

 As a defense, and also by way of a re-conventional demand, the principal defendants, who are the children of the second and third marriages of John R. Bagents, Sr., deceased, pleaded that they are the owners of the disputed land and the timber thereon by virtue of the prescription of 30 years acquirendi causa.
 

 The litigation is a sequel to a suit entitled Bagents v. Crowell Long Leaf Lumber Company, Inc., La.App., 20 So.2d 641, in which the plaintiff therein (one of the defendants here) obtained a judgment enjoining the defendant lumber company from cutting timber on the land, the court having found that he had possessed the property for more than a year prior to the occurrence of the complained of disturbance.
 

 After trial of the instant petitory actions the district court rendered judgments recognizing the respective plaintiffs as owners
 
 *632
 
 of the land and timber in controversy, entitled as such to the undisturbed possession thereof. From the judgments defendants appealed.
 

 Prefacing their argument in this court, to quote from their brief, counsel for appellants appropriately state:
 

 “Plaintiffs have offered their deeds to establish a record chain of title to the land and timber into each of them respectively.
 

 “The issue in the case is whether these defendants have established a superior title in themselves by virtue of the acquisitive prescription of 30 years possession, for if they have the plaintiffs’ record title is thereby defeated and these defendants should have judgment as prayed for, while if they have not then plaintiffs’ record title must prevail.”
 

 The doctrine of the acquisitive prescription by 30 years’ possession is declared in the following articles of the Civil Code:
 

 “3499. Title or possession in good faith unnecessary.- — -The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith.
 

 “3500. Adverse possession required — • Essentials. — The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.
 

 “3501. Acts evidencing intention to preserve possession. — The possession necessary for this species of prescription, when it has commenced by the corporal possession of the thing, may, if it has not been interrupted, be preserved by external and public signs, announcing the possessor’s intention to preserve the possession of the thing, as the keeping up of roads and levees, the payment of taxes, and other similar acts.
 

 “3502. Civil possession — Retention—Evidence. — A man may even retain the civil possession of an estate, sufficient to prescribe, so long as there remain on it an}' vestiges of works erected by him, as, for example, the ruins of a house.
 

 “3503. Restriction as to extent of possession. — How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is' acquired without title, it extends only to that which has been actually possessed by the person pleading it.”
 

 Other codal provisions pertinent here are:
 

 “3510. Precarious possessors. — Those who possess for others and not in their own name, can not prescribe, whatever may be the time of their possession.
 

 “Thus, farmers, tenants, depositaries, usufructuaries and all those generally who hold by a precarious tenure and in the name of the owner, can not prescribe on the thing thus held.
 

 “3511. Heirs of precarious possessors. —The heirs of the persons holding under
 
 *634
 
 the tenures mentioned in the preceding article, can not prescribe any more than those from whom they hold such thing.”
 

 “3514. Nature and origin of possession. —Change by prescription prohibited. — One can not prescribe against his own title, in this sense, that he can not change by his own act the nature and the origin of his possession.”
 

 “3441. Possession held for another- — ■ Possessor barred from acquiring legal possession. — Those who possess, not for themselves, but in the name of another, as farmers, .depositaries and others who acknowledge an owner, can not acquire the legal possession, because, at the commencement of their possession, they had not the intention of possession for themselves but for another.”
 

 “3446. Possession obtained for another —Continuance of intention presumed.— Even if a person who commenced his possession of an estate for another, should entertain the intention of no longer holding for that other, but for himself, yet shall he still be presumed to hold possession for the person for whom he originally took it.”
 

 And in Civil Code Article 3505 it is said that the rules established for the prescription of 10 years acquirendi causa are applicable to that of 30 years, except where there exists a conflict between the respective provisions. Of the 10 year prescription rules, the following are seemingly appropriate to this cause:
 

 “3488. Presumption of possession as
 
 owner.
 
 — As to the fact itself of possession, a person is presumed to have possessed as master- and owner, unless it appears that the possession began in the name of and for another.
 

 “3489. Possession commenced for another • — Presumption.—When a person’s possession commenced for another, it is supposed to continue always under the same title, unless there be proof to the contrary.
 

 “3490. Permissible or precarious possession insufficient. — The circumstance of having been in possession by the permission or through the indulgence of another person, gives neither legal possession nor the right of prescribing.
 

 “Thus, those who possess precariously, that is, by having prayed the master to let them have the possession, do not deprive him thereof, but, possessing by his consent, they possess, for him.”
 

 With these rules in mind, we proceed to a consideration of the facts disclosed by the record before us. It appears that prior to the occurrence of any of the events involved in this. litigation, John R. Bagents, Sr., acquired some land in the vicinity of what is now Simpson in Vernon Parish, and on it he built his home. The north, line of his property was the south section line of Section 33, Township 4 North, Range
 
 7
 
 West, as well as the south line of the tract in dispute which lies in the S% of the SE14 of said Section 33. Being
 
 *636
 
 desirous of having a pasture for his cattle and other livestock, Mr. Bagents, during or about the year 1911 (at least 34 years before the institution of these suits), enclosed by a fence some 50 or 60 acres of wooded land, using for the purpose three or fouistrands of barbed wire and oak posts. Comprising this pasture were about three acres from the north portion of his property; the adjacent 28.8 acres in controversy here; and some other land in Section 33 that adjoined the disputed area on the north. Thus, the south fence of the pasture was located entirely on the Bagents home place a short distance from the south boundary of the 28.8 acres in dispute.
 

 Mr. Bagents used the pasture for many years in carrying on his livestock operations until the north string of fencing, located about 25 acres north of the tract in litigation, was substantially damaged by fire. This damage was never repaired by him, and from the time of its occurrence until after his death in 1930, a period of several years, no part of the property was completely enclosed. Remains of the burned fence, however, being wire lying on the ground and charred fence posts, were observable.
 

 In 1932, after the elder Bagents’ death, some of his children who had continued to reside on 'the -home place joined with a neighbor, one A. J. Malone, in reconstructing the north string of fence and in repairing the fencing remaining on the other three sides. Instead, however, of re-establishing the north line so as to comprehend all of the acreage of the pasture as created in the first instance by John R. Bagents, Sr. (50 or 60 acres), it was moved south approximately 25 acres, and the fence was erected about mid-way across what had been the original pasture. Thus, the present disputed area of 28.8 acres was formed. The principal reason for this reduction in acreage of approximately '50%, according to one of the defendants, was to provide a passageway or road in favor of Mr. Malone’s property located east of the pasture. Thereafter, this reduced or new pasture has been used continuously by the Bagents heirs, Mr. Malone, and other persons of that vicinity for the pasturing of stock.
 

 As stated in Civil Code, Article 3500, above quoted, the possession on which the prescription of 30 years acquirendi causa is founded must be (1) continuous and uninterrupted during all the time, (2) public and unequivocal, and (3) under the title of owner.
 

 Even if it be assumed (without deciding here) that the elder Bagents and his children have enjoyed for more than 30 years the required continuous, uninterrupted, public and unequivocal possession of the disputed land and timber (28.8 acres), these defendants have not acquired title thereto by prescription unless their possession was under the title of owner. It is important, therefore, to determine whether this third requisite has been fulfilled, for if their possession was through the indulgence and
 
 *638
 
 with the permission of the record owners, as plaintiffs insist it was, the right of prescribing has never existed. Civil Code, Articles 3490 and 3510, quoted supra.
 

 During the trial plaintiffs offered much evidence to prove that John R. Bagents, Sr., began his possession of the property in 1911 with the consent and permission of the then record owner, and that he and his heirs continued that character of possession during the tenure of their occupancy. To the introduction of this evidence defense counsel objected on the ground that it sought to contradict and alter plaintiffs’ pleadings. The evidence, admitted by the court subject to the objection, was, in our opinion, admissible. True, plaintiffs’ petitions do allege that defendants are trespassers and are exercising their rights of possession without the consent of the owners. But those allegations, made in the suits filed in 1945, followed and were based on defendants’ refusal to remove from the premises in 1943 when demanded to do so by plaintiffs. Clearly, on the filing of the suits defendants were holding adversely to plaintiffs.
 

 Part of the evidence introduced by plaintiffs was the testimony of two disinterested witnesses, Henry Clay Gordy and H. B. Ford, who had resided in the vicinity of the property for many years. These persons testified unequivocally that they were present when John R. Bagents, Sr., requested from a Mr. Potter, the agent for the then record owner (Southland. Lumber Company), permission to build his original fence and to enclose the property, and. that Mr. Potter then and there granted the request on the condition that Mr. Bagents protect the timber and refrain from nailing wire to the trees. Henry Stanley, another witness and a son-in-law of John R. Bagents, Sr., testified that the latter ‘acknowledged to him shortly after the land was enclosed that Mr. Potter had granted permission for the erection of the fence with the understanding that the timber would not be injured.
 

 Of course, the evidence furnished' by those witnesses would have little probative value if it stood alone. As pointed out by defense counsel, testimony as to ■statements made by a person since deceased is the weakest kind of evidence. But it does not stand alone; it is supported by strong circumstances, clearly revealed by the record, indicating that the possession of John R. Bagents, Sr., and his heirs was held at all times with the permission and consent of the record owner, except following the occurrence Of the refusal to move about 1943.
 

 Among the proven circumstances supporting the discussed testimony is the continual failure of those possessors to have the property assessed to them and to pay the yearly taxes thereon. Throughout the entire period in question the assessments were in the names of the respective record owners, and by them the taxes were paid.
 

 
 *640
 
 Again, about the year 1923, John R. Bagents, Sr., sold to one Frank Jackson all of the timber that he owned in the vicinity. In connection with the sale, Bagents pointed out to Jackson the northern boundary of his property, which was the south section' line of Section 33 and the south line of the land now in controversy, and it was up to, but not beyond, that boundary that Jackson felled and removed the trees. The timber north of the dividing line still stands and is that now in dispute.
 

 Of importance here also is the fact that the heirs of John R. Bagents, Sr. (defendants herein) abandoned completely, during the year 1932, the north portion of the original pasture (about 25 acres) in re-establishing and re-buildiñg the north fence that had been destroyed by fire some years previously. If they had possessed as owner, it seems unlikely that their claim to such 25 acre parcel, with the valuable timber thereon, would have been relinquished, particularly when the principal reason for the abandonment was merely to provide a passageway or road for the benefit of a neighbor’s (Mr. Malone’s) property.
 

 Furthermore, from time to time, throughout the period of possession held by the Bagents, certain agents and employees of the respective record owners have gone on the property in dispute and have exercised control thereof by cruising and inspecting the timber, by making surveys, and by removing fallen trees therefrom. To these acts no objection was ever voiced.
 

 Finally, it is significant that in 1940, the children of the first marriage of John R. Bagents, Sr., sold and conveyed all of their interest in their father’s succession to some of the defendants, and the deeds evidencing the transfer did not mention the land in dispute, although other property was specifically described therein.
 

 Opposed to the above testimony.of the three witnesses (relating to statements made by the elder Bagents about the obtaining of permission to enclose the land) and also to the discussed corroborating circumstances, is merely the proof that the property was kept fenced most of the time and used for pasturage purposes and that occasionally the possessors obtained therefrom stove wood and fence pickets. No other acts tending to indicate possession as owner are shown, not even the cutting of timber from the tract, of which there was a great quantity, for the purpose of sale. The circumstance of this paucity of proof on the part of the defendants is required to be noticed when it is recalled that they carry the burden of proving that their possession was under the title of owner. “The burden of proof is on him who pleads prescription of 30 years to show that his possession began and continued as owner and adverse to the true owner.” Dew v. Hammett, 150 La. 1094, 91 So. 523, 525. See also Texas Company v. Theriot, 172 La. 662, 135 So. 17; Vance v. Sentell, 178 La. 749, 152 So. 513.
 

 
 *642
 
 It is important also to consider that the question of whether or not these defendants and their father held continuous possession of the land for 30 years as owners is one of fact, and that the finding on such a question by the trial judge, who saw and heard the witnesses and perhaps was acquainted with them, is entitled to great weight and will not be disturbed unless manifestly erroneous. Loeb v. Fetzer, 155 La. 659, 99 So. 520. By his resolving the question in favor of plaintiffs we can not say that manifest error was committed.
 

 The judgments are affirmed.