HOOD, Judge.
Mrs. Florence Irma Clark Marks, individually and in behalf of her three minor children, claims damages for the wrongful death of her husband, Sam Alduce Marks, who died from injuries sustained while he was riding as a passenger in a truck being driven by Paul Elliot Arnaud. The defendants are Arnaud, the St. Landry Parish Police Jury (Police Jury), St. Landry Parish, and Ford Motor Company.
Judgment was rendered by the trial court in favor of plaintiff against Arnaud and the Police Jury, but plaintiff’s demands against Ford Motor Company and St. Landry Parish were rejected. Defendants Arnaud and the Police Jury have appealed.
The issues are whether the driver of the truck, Arnaud, was negligent, and if so, whether the decedent was employed by the Police Jury when he was injured, and thus *821 whether the claim of his survivors against the Police Jury is exclusively under the Workmen’s Compensation Act.
The accident occurred shortly before noon on April 11, 1968, at the intersection of U. S. Highway 167 and Louisiana Highway 10, a few miles west of Ville Platte, in Evangeline Parish. The decedent at that time was riding in a 1960 Ford dump truck owned by the Police Jury and being driven by its employee, Arnaud. The truck was loaded with 14,000 pounds of gravel, and immediately before the accident occurred it was being driven south on Highway 167 toward the point where that highway runs into and forms a “T” intersection with Highway 10. When Arnaud was about one-fourth of a mile from that intersection he applied his brakes, but the pedal went to the floor and he discovered that his service brakes would not function. He thereupon attempted to reduce the speed of the truck by downshifting from fourth to third gear, and when he reached the intersection he endeavord to turn to his right on Highway 10. As he was trying to complete that maneuver, the front wheels of the truck struck a raised island at the intersection, causing him to lose control of that vehicle. The truck then ran into a ditch and turned over. Marks was killed almost instantly as a result of that accident.
The truck was traveling at a speed of 40 to 45 miles per hour when the driver first attempted to apply his brakes. By shifting gears Arnaud managed to reduce his speed slightly, but he was traveling 30 or 35 miles per hour when he lost control of the vehicle.
Arnaud did not attempt to use the emergency brakes on the truck at any time, because he knew that those brakes had been disconnected and that they would not function. He had been driving that particular truck for the Police Jury for a period of four years prior to the accident, and during all of that time he knew that the emergency brakes were not hooked up and that they would not work. He had never informed anyone who was a member of or was connected with the Police Jury of the faulty condition of the truck’s emergency brakes.
The trial judge did not assign written reasons for judgment, but he obviously found that Arnaud was negligent since judgment was rendered condemning him to pay damages to plaintiff.
LSA-R.S. 32:341 requires that every motor vehicle “shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which shall be effective to apply the brakes to at least two wheels.” The requirement of that statute that every motor vehicle be equipped with emergency brakes is a safety measure, and the obvious intent of the Legislature was to require that the motorist resort to the use of the emergency brakes when the foot brakes or service brakes fail or for some other reason are ineffective. Sers v. South Central Bell Telephone Company, 304 So.2d 760 (La.App. 3 Cir. 1974). The operation or driving of a motor vehicle on a public highway without operable and effective emergency brakes, as required by LSA-R. S. 32:341, constitutes negligence. Ryan v. Rawls, 260 So.2d 137 (La.App. 2 Cir. 1972); Robinson v. American Home Assurance Company, 183 So.2d 77 (La.App. 3 Cir. 1966).
Applying the above rules to the instant case, we find that Arnaud was negligent in operating the truck on a public highway without operable and effective emergency brakes.
Defendant contends, however, that because of the heavy load the truck was hauling, the emergency brakes probably would not have enabled him to stop the truck in time to avoid an accident, even if they had been connected and had functioned properly. He argues that there thus was no causal connection between the acci *822 dent and his failure to see that the emergency brakes were repaired. We find no merit to that argument for two reasons. First, Arnaud’s statement that he would not have been able to avoid an accident even if the emergency brakes had been hooked up is merely speculation on his part, and we are not convinced that he is correct in that assumption. Second, if operable emergency brakes would have been inadequate to enable the driver to control his truck enough to avoid an accident after the service brakes failed, then it would appear that the operator either was driving the truck too fast as he approached the intersection or that he waited too late to apply his brakes. We think Arnaud owed a duty to his passenger, Marks, not only to see that the truck was equipped with operable emergency brakes, as required by law, but also to operate the truck at a safe speed and otherwise to exercise reasonable care.
Arnaud also contends that he was under no duty to ask his employer, the Police Jury, to repair the emergency brakes on the truck. His argument is that he had brought the truck to the Police Jury’s repair shop on several occasions for other repairs, and that the mechanics there “must have known” that the emergency brakes were disconnected. He argues further that Addie Ryder, the police juror for Ward Four, also must have known that the emergency brakes were disconnected “because it was the only truck used by the Police Jury in that ward.” He points out that he had no control over the vehicle with reference to its repairs, that he was ordered by Ryder to drive the truck that day, and that his refusal to drive it in its existing condition “might possibly have caused him to lose his job.”
We have considered the circumstances just mentioned, but have concluded that they do not relieve the defendant driver of the duty to exercise reasonable care which he owes to passengers and others. The evidence shows that Arnaud never notified his employer of the fact that the truck had no emergency brakes, although he knew that those brakes had been disconnected for four years before the accident occurred. Arnaud also never asked the Jury or the latter’s mechanics, to repair that defect in the truck, even though he took the truck to the repair shop on several occasions to have other work done on it. The record does not show that the mechanics or Ryder or anyone else on the Police Jury knew that the emergency brakes had been disconnected, and we find nothing which indicates that a request from Ar-naud that the emergency brakes be repaired would be ignored.
The driver of a motor vehicle owes his passenger the duty of exercising reasonable care, and that duty is separate from any other duty he may owe to his employer. In this instance, Arnaud owed the duty of exercising reasonable care to Marks. His failure to see that the truck was equipped with emergency brakes, or his failure to warn Marks of the danger, was a breach of the duty he owed to his passenger. His failure in that respect constituted negligence which was a proximate cause of the accident. He thus is personally liable to the decedent’s survivors for the damages they sustained as a result of that negligence.
The judgment appealed from will be affirmed insofar as it condemns defendant Arnaud to pay damages to plaintiff.
We turn now to the question of whether the decedent, Marks, was working for the Police Jury at the time the accident occurred. If he was, then the claim of his survivors against the Police Jury would be governed exclusively by the Workmen’s Compensation Act, and their claim for damages against the Police Jury in this suit will have to be rejected.
Arnaud had worked regularly for the Police Jury for four years prior to the acccident, and his work was performed largely under the supervision of the late Addie Ryder, a member of that body. The decedent Marks had worked part-time for *823 the Police Jury for ten years. His work, at least during the last four years of his life, also was largely under the supervision of Ryder, and he usually worked as a “swamper” on the dump truck with Ar-naud. Ryder was defeated in his bid for re-election as a member of the Police Jury in December, 1967, and his term expired in June, 1968. He thus was a “lame duck” member of the Police Jury when this accident occurred on April 11, 1968. He died prior to the trial, and his testimony thus was not available.
The decedent’s duties as a swamper on the dump truck required him to assist the driver in securing the load on that vehicle and in dumping or unloading the truck. He earned $5.00 or $6.00 per day when he worked, and he made an average of about $70.00 per month working for the Police Jury. He supplemented his income from that job by fishing commercially, his fishing activities netting him about $20.00 per month.
Arnaud drove the dump truck to Ryder’s home, about two miles north of Port Barre, early on the morning of April 11, 1968, and Ryder instructed him at that time to pick up the decedent and to haul two loads of gravel from Turkey Creek to Port Barre on that day. Arnaud thereupon drove to Marks’ home near Port Barre, picked up the decedent about 6:30 A.M., and they drove a distance which we estimate to be more than 40 miles to a gravel stock pile in Turkey Creek, Louisiana, where the truck was loaded with gravel. In driving from Port Barre to Turkey Creek, they drove through the towns of Washington and Ville Platte. They were returning to Port Barre with that load of gravel when the accident occurred. Ar-naud stated that Marks was working for the Police Jury as a swamper on the truck that day, as he had done many times before. He testified that Marks did not go with him merely for the ride, but that “he was swamping,” that “he was getting paid for what he was doing,” that “we were told to get together and go to work and get some gravel,” that “I understood he was going to work with me,” and that “we were going to work together.”
A few days after the accident occurred, the Police Jury made out a check payable to Marks, or to his widow, for work performed by the decedent. Arnaud took that check to plaintiff, who accepted it, and Ar-naud testified that it specifically included payment for work performed by Marks on April 11, 1968, the date on which the accident occurred. Mrs. Marks concedes that a few days after her husband’s death she received a check for some work which he had done for the Police Jury, and she admits that workmen’s compensation benefits were paid to her by the Police Jury, or its insurer, for a period of about three months after her husband’s death. She contends, however, that the decedent did not work for the Police Jury on the day the accident occurred.
Mrs. Marks bases her contention that the decedent was not working when the accident occurred on statements which Marks allegedly made to her and to others before he left his home. She testified that the decedent told her just before he got into the truck that morning that he was going to ride with Arnaud to buy some fruit in Ville Platte, and that he was not going to work. A neighbor, Mary Lou Mallet, testified that she went to the Marks’ home about 6:00 A.M. that day, and that the decedent told her that he was going to take a ride with Arnaud to get a load of gravel, and that he would be back soon. The decedent’s son, who was a minor when the suit was filed but has since reached' the age of majority, testified that his father had told him the previous day that he was not going to work on the day the accident occurred. He also stated that the decedent had set out fishing lines on the morning of the accident, and that ordinarily the decedent did not do that on days he worked.
Arnaud testified that they drove through Ville Platte in route to Turkey Creek, but that they did not stop to buy fruit there or *824 anywhere else. He also stated that the decedent did not mention to him at any time that day that he wanted to buy fruit, and that he knew of no plans to stop in Ville Platte for that purpose, although he said that on some prior occasions he and the decedent had purchased fruit in Ville Platte while making similar trips hauling gravel for the Police Jury.
Defendants objected to the testimony offered by plaintiff as to oral statements made by Mr. Marks prior to his death. The objection was based on the grounds that it was hearsay evidence of a self-serving nature. The trial judge admitted the testimony subject to a later ruling, and the record does not indicate whether he eventually accepted or rejected that evidence.
We have decided to consider the testimony of these witnesses as to the statements made by the decedent before he boarded Arnaud’s truck. It is settled, however, that testimony as to oral statements made by a deceased person is the weakest kind of evidence and is entitled to little weight. LaRocca v. Ofrias, 231 La. 292, 91 So.2d 351 (1956); Succession of Rockwood, 231 La. 521, 91 So.2d 779 (1956); Meridian Land & Mineral Corporation v. Bagents, 211 La. 627, 30 So.2d 563 (1947); Bodenheimer v. Executors of Bodenheimer, 35 La.Ann. 1005 (1883); and Pellenz v. Bullerdieck, 13 La.Ann. 274 (1858).
The evidence, considered as a whole,' convinces us that the decedent was working for the Police Jury at the time the accident occurred. The trial judge manifestly erred, therefore, in his apparent holding that Marks was not in the course of his employment at that time. We conclude that plaintiffs’ recourse against the Police Jury is exclusively under the provisions of the Workmen’s Compensation Act, and that the judgment appealed from must be amended by deleting that part of the decree which condemns the Police Jury to pay damage's to plaintiffs.
For the reasons herein set out, the judgment appealed from is amended as follows: (1) By deleting that part of the judgment which condemns St. Landry Parish Police Jury to pay any amount whatsoever to plaintiffs; (2) by adding to the judgment a decree that this suit is dismissed insofar as it is directed against St. Landry Parish Police Jury; and (3) by deleting that part of the judgment which casts St. Landry Parish Police Jury for costs of the proceedings in the trial court. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant, Paul Elliot Arnaud.
Amended and affirmed.