SWIFT, Judge.
This was originally a possessory action, but it has been converted into a petitory action through a reconventional demand filed by the defendants, Willard and Cathleen White. The Whites assert they are the record owners of a ten acre tract described as the Southeast Quarter of the Southeast Quarter of the Northwest Quarter of Section 13, Township 9 South, Range 13 West, Calcasieu Parish, Louisiana, which is in the possession of the plaintiffs, Roy J. and Bessie Lee Barrett. The Barretts claim the property by acquisitive prescription of thirty years. The trial court rendered judgment in favor of the Whites, declaring them to be owners of the subject property. Plaintiffs have appealed.
At the trial it was stipulated that Mr. and Mrs. White have record title to the land in dispute. The trial judge succinctly stated the pertinent facts as follows:
“The evidence shows that most of the Northwest Quarter of Section 13 was owned at one time by Eldridge Drake. On November 25, 1922, Eldridge Drake sold the Southwest Quarter of the Southeast Quarter of the Northwest Quarter of Section 13 to his son-in-law, Bill Perkins who was married to Clara Drake. After the death of Eldridge Drake and on November 2, 1925, his heirs including Clara Drake Perkins sold the disputed land to Lastie Paul Vincent, an ancestor in title of Mr. and Mrs. Willard White.
“According to Mrs. Elizabeth Ozane who lived near the disputed land and was seventy-one (71) years of age at the time of trial, Bill Perkins and his wife, Clara Drake Perkins, moved onto the Southwest Quarter of the Southeast Quarter of the Northwest Quarter of Section 13 in 1921 after erecting a house thereon. According to Mrs. Ozane, the following year (1922) Bill and Clara Perkins erected a fence enclosing both the Southwest Quarter of the Southeast Quarter of the Northwest Quarter and the Southeast Quarter of the Southeast Quarter of the Northwest Quarter of Section 13. The Court finds that this fence was not erected on the property lines but was erected an undisclosed distance North of the North Line of the South half of the Southeast Quarter of the Northwest Quarter; approximately seventy (70) feet East of the East line of the Southeast Quarter of the Southeast Quarter of the Northwest Quarter; and approximately one hundred twenty-six (126) feet South of the South line of the South half of the Southeast Quarter of the Northwest Quarter of Section 13. The fence as erected by Mr. Bill Perkins encroached on the East and South upon land owned by Lutcher and Moore Lumber Company. There was introduced into evidence as “White 1” a copy of a lease dated February 21, 1964 with Mrs. Bill Perkins as lessee wherein she leased that portion of property owned by Lutcher and Moore Lumber Company lying within the fenced area. One of the plaintiffs, Mrs. Roy Barrett, testified that she was not aware that her mother, Clara Drake Perkins (Mrs. Bill Perkins) had signed the 1964 lease with Lutcher and Moore Lumber Company. She did testify that she was aware that during his lifetime, her father had executed similar leases with Lutcher and Moore Lumber Company. Mrs. Barrett testified that the fence which was erected by her father was continually maintained by him until his death and by her husband, Roy Barrett.
“According to Mr. and Mrs. Barrett, in 1948, Mr. Bill Perkins permitted them to construct a house at the Northeast Corner of the Southwest Quarter of the Southeast Quarter of the Northwest Quarter. It appears from the testimony of several witnesses, that the Barrett house is situated partly on the Southwest Quarter of the Southeast Quarter of the Northwest Quarter and the Southeast Quarter of the Southeast Quarter of the Northwest Quarter. In any event, the Barretts have occupied the house since 1948. During the period of time from 1922 until the present, the dis *947 puted property has been under fence and the enclosed property has been used for the grazing of cattle by either the Bill Perkins family or the Roy Barrett family or both. It is not clear when Mr. Bill Perkins died but Mrs. Perkins died in 1969.
“Mrs. Barrett testified she thought her parents owned the ten (10) acres. Mr. Barrett testified he knew his father-in-law did not have title; that he knew that the Vin-cents’ (sic) owned the property; and that he did not consider himself to be the owner of the property but he had used the property for thirty-two (32) years.”
The sole issue presented on this appeal is whether the Barretts’ possession has been sufficient to give them a thirty-year prescriptive title to the ten acres in dispute.
In Wm. T. Burton Industries, Inc. v. McDonald, 346 So.2d 1333, 1336 (La.App. 3 Cir. 1977), this court said:
“The law is settled that in order for a possessor to successfully claim the ownership of immovable property under a plea of thirty years acquisitive prescription, he must establish not only that there has been corporeal possession of the property for the required period of time, but also that there was a positive intent to possess the property as owner during that time. The intent to possess as owner may be inferred from the surrounding facts and circumstances. Ordinarily, however, the intent to possess as owner should not be inferred unless the actions of the possessor, or the surrounding facts and circumstances, are sufficient to reasonably apprise the public, and the record owner of the property, of the fact that the possessor intended to possess as owner. The burden of proof to establish the facts essential to support a plea of thirty years acquisitive prescription rests on the party who pleads it. Humble v. Dewey, 215 So.2d 378 (La.App. 3 Cir. 1968), and cases cited therein. [Emphasis added.]
Also in Humble we said at page 381: “In order for a possessor to successfully claim the ownership of immovable property under a plea of thirty years acquisitive prescription, he must establish not only that there has been corporeal possession of the property for the required period of time, but also that there was a positive intention to take and commence possession of the property as owner. [Emphasis added.]
In regard to the character of his possession Mr. Barrett testified that while the question of ownership of the disputed tract had not come up until just before this suit was filed, he knew he did not own this land and never claimed to own it. Instead, he was simply using it. This testimony was similar to that of the possessor in the recent case of Harper v. Willis, 383 So.2d 1299 (La.App. 3 Cir. 1980), whose right to bring a possessory action was denied.
Under the circumstances the trial judge concluded the Barretts had failed to establish that their possession of the property was public and unequivocal or under the title as owner. According to our supreme court in Meridian Land & Mineral Corporation v. Bagents, 211 La. 627, 30 So.2d 563, 567 (1947):
“It is important also to consider that the question of whether or not these defendants and their father held continuous possession of the land for 30 years as owners is one of fact, and that the finding on such a question by the trial judge, who saw and heard the witnesses and perhaps was acquainted with them, is entitled to great weight and will not be disturbed unless manifestly erroneous.” [Emphasis added.]
From our review of the record we certainly cannot say that the trial judge was manifestly in error or clearly wrong in finding that the plaintiffs’ possession did not begin and continue for 30 years as owner of the disputed 10 acres and therefore their plea of 30 years prescription was unavailing.
For the foregoing reasons, the judgment of the district court is affirmed at the cost of plaintiff-appellant.
AFFIRMED.