STOKER, Judge.
This is a boundary action brought by James E. Hutchins and others to fix two boundaries of property owned by them in Catahoula Parish. This property lies to the east and south of a tract of land owned by the defendants, the heirs of Burt Mason, referred to herein as the “Mason tract.” The plaintiffs (the Hutchins) sought to have the two boundaries established according to their titles. A court-appointed surveyor (Bryant O. Hammett, Jr. of Bryant Hammett and Associates) surveyed *1003 the property lines according to the titles of record and plotted the lines on a plat of survey dated December 10, 1987. A copy of the plat is annexed hereto as Appendix I.
The defendants-appellees, the Masons, failed to answer the plaintiffs’ petition and the trial court fixed the two boundaries in a default judgment in accordance with the surveyor’s findings. The Masons were granted a new trial but contested only one of the boundaries, the south boundary of the Mason tract. The position of the Masons is that they acquired a strip of land of varying widths south of the line established by the surveyor and that line has been marked by a fence. The Masons claim they have acquired the disputed strip by 30 years acquisitive prescription.
As the issue was framed, the question to be determined was whether the Masons had maintained possession of the disputed strip so as to acquire ownership of it through acquisitive prescription. The trial court did not address this question directly. Instead, it appears to have compromised matters between the litigants (to use the court’s words) and to have established a boundary of its own which represented neither the line established by the surveyor nor the line indicated by the fence line. Plaintiffs-appellants (the Hutchins) appeal this judgment contending the trial court erred in rejecting the south boundary fixed by the surveyor. We reverse.
OPINION
The parties apparently concede, and the evidence tends to show, that the fence erected by the Masons at their south boundary has been in existence at least thirty years. However, we find that defendants have not fulfilled all the requirements for acquisitive possession in that the evidence shows that Burt Mason did not intend to possess the strip of land as owner.
To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. LSA-C.C. art. 3424; Barrett v. White, 386 So.2d 945 (La.App. 3d Cir.1980); Harper v. Willis, 383 So.2d 1299 (La.App. 3d Cir.), writ denied, 390 So.2d 202 (La.1980). One is presumed to intend to possess as owner unless he began to possess in the name of and for another. LSA-C.C. art. 3427. When it is shown that the possession was begun for another, the presumption set forth in LSA-C.C. art. 3427 does not arise. In cases in which the presumption does arise, it is rebuttable. LSA-C.C. art. 3427, Official Comment (d). It is clear that the intent to possess as owner has to do with the subjective intent of one who professes to possess and does not mean that the possessor must pretend to have valid title rights. Inasmuch as the corporeal possession required as a predicate to a possessory action is the same as that required for acquisitive prescription of 30 years, the corporeal possession must be open and notorious and adverse or hostile to the true owner and everyone else. Harper v. Willis, supra at 1307.
In the case before us the person who began the alleged possession, Burt Mason, died before this litigation began and thus was unavailable to testify as to his intent. However, testimony was introduced as to Burt Mason’s intent by Cecil McGuffee and James Hutchins. Cecil McGuffee is a former owner of the Hutch-ins tract which lies south of the Mason tract. McGuffee bought the Hutchins tract from International Paper Company and owned it at the time Burt Mason built the south fence. McGuffee testified as to Burt Mason’s intent and the nature of his possession at its commencement as follows:
“A. I don’t even remember what it was, just ... approximate area where it was. But whenever we bought the land, International Paper Company painted a line between them and all the private property. The reason I remembered this is because where the lines..where we were buying to, they made us run the line. But the other part, they painted it out., and that line there was painted out. I’d been knowing Burt for many years and I knew him to be an honest man., and he said ‘Whenever we get ready to fence it, we’ll get it on *1004 the line.’ He wanted to provide for his cattle, so he asked me about when we fenced back there of making him a gate so he could get his cows on the other side., and I asked.. I said, ‘Where do you want it? You show me and we’ll put it.’ So we put it there. Sam can tell you where ..we put the gate. But this fence back then was on..over the line.
“Q. Over on the IP property?
“A. It was on the IP property. Well, if it had been, you could tell over the years where it had been torn down and he did just like everybody else does ... whenever you got a hole in it, you fenced around it. And you could find those places along where he’d go around. You’d find you some more trees and..and put it on around. It would..it was a sort of meandering line you would say.
“Q. And would it be fair to say that it was just an ordinary woods fence?
“A. Yes, it was. It was just like..just like everybody else would do if they went down through the woods building a fence.
“Q. It..was it net wire or was it barbed
[[Image here]]
“A. The best I could..best I can remember, it was barbed wire, but you know that’s..that was several years ago.
“Q. Mr. McGuffee, just one other question ... did that fence vary from one point to another as it was rebuilt? Could you tell that it did vary?
“A. There were places you could see where it varied, you know..that there’d be a hole that would have to be patched and they’d build around it.
“Q. Yes sir. How much would the variance be?
“A. I couldn’t say..three or four feet..maybe five feet..something like that.
“Q. Did the..did the..did the IP painted line extend ... or did the barbed wire fence extend across the IP painted line?
“A. The..it was over..it was on the IP side.”
McGuffee’s unrebutted testimony shows that he had agreed to allow Burt Mason to place the fence over the boundary line for the sake of convenience.
James Hutchins also testified as to Burt Mason’s intent:
“Q. And..and did you see the..the boundary line between the Mason’s [sic] and your line back there when you bought the property? Did you inspect it?
“A. Yes, I did.
“Q. What..tell the Court now what condition., what., what you saw back there.
“A. Well, it had this fence running back and forth, zigzagging through the trees, and they hadn’t cleared past the trees and Mr. Burt Mason, who is dead now..he was killed in an accident back there..but anyway, Mr. Burt..I’ve known him all my life., and we talked about it. Mr. Burt always called me Sonny. He said, ‘Well, Sonny, don’t worry about it.’ Said, T know I’m over on you there a little bit. One of these days we’ll rebuild that fence and we’ll decide where the line is.’ And that’s the way we left it all them [sic] years.
“Q. And..and you never worried about it back there?
“A. I never worried about it a day till he died.”
According to this testimony, Burt Mason acknowledged to two witnesses that he knew his fence was over the south boundary line and he had the permission of these two record owners to keep the fence there. We find this evidence sufficient to show that Burt Mason did not possess the disputed tract with the intention of possessing it as owner. Our case is distinguishable from the case of Williams v. McEacharn, *1005 464 So.2d 20 (La.App. 2d Cir.1985), in which the Court of Appeal for the Second Circuit found ownership by acquisitive prescription. In that case the Second Circuit did not find the declaration against interest of a deceased possessor offered by the current title owner sufficient to rebut the presumption of intent to possess as owner where no prior record owner testified as to the nature of the deceased’s possession.
Therefore, defendants-appellees have failed to carry their burden of proving the intent element necessary to maintain ownership by acquisitive prescription.
CONCLUSION
For the reasons given above the amended judgment of the trial court following the new trial, rendered and signed on July 11, 1988, is reversed and set aside; judgment is now rendered in favor of plaintiffs and against defendants in the same form and substance as the judgment of the trial court rendered as a default judgment on April 28, 1988.
JUDGMENT RENDERED ON NEW TRIAL REVERSED; JUDGMENT RENDERED IN FAVOR OF PLAINTIFFS.
*1006 APPENDIX I.
[[Image here]]