# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 20-39


**DEBORAH MARIE HORAIST**

**VERSUS**

**EDWARD A. PRATT AND JEAN JOHNSON PRATT**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2017-5592
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.

**REVERSED AND RENDERED.**

**Samuel E. Masur**
**Paul B. Simon**
**Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC**
**400 East Kaliste Saloom Road, Suite 4200**
**Lafayette, LA 70508**
**Telephone: (337) 237-0132**
**COUNSEL FOR:**
     **Defendants/Appellees - Edward A. Pratt and Jean Johnson Pratt**

**Alan K. Breaud**
**Timothy W. Basden**
**Breaud & Meyers**
**P. O. Bos 3448**
**Lafayette, LA 70502**
**Telephone: (337) 266-2200**
**COUNSEL FOR:**
     **Plaintiff/Appellant – Deborah Marie Horaist**

**THIBODEAUX, Chief Judge.**

Plaintiff, Deborah Marie Horaist, instituted a petitory action against Edward A. Pratt and Jean Johnson Pratt (Pratts), seeking a declaration that she is the rightful owner of a strip of land at the backyard boundary between her property and the Pratts' property. The Pratts filed a reconventional demand, seeking a declaration that they were the rightful owners of the disputed property. Both parties sought injunctive relief against the other. After a trial on the merits, the trial court declared the Pratts acquired ownership of the disputed property through thirty-year acquisitive prescription and set the boundary between the properties accordingly.

Because our review of the record evidence demonstrates the trial court manifestly erred in finding the Pratts proved their claim of thirty-year actual, adverse corporeal possession of the disputed property, we reverse the trial court's judgment and render judgment setting the boundary between the properties in accordance with the recorded titles and subdivision plat referred to therein.

## I.

## ISSUES

Mr. Horaist raises the following issues for this court's review:

1.   whether adverse possession of the property owned by another can be supported by a mere assumption of ownership and indefinite suggestions of occasional use;

2.   what is required in order for a finding of adverse corporeal possession of land to be continuous, uninterrupted, peaceable, public, unequivocal, and within visible bounds?;

3.   whether the trial court should have ruled in favor of Deborah Horaist, fixed the boundary as set out in the titles, the subdivision plat and the survey;

4. whether the Pratts should have been ordered to move their wooden fence, constructed in 2012, to their property line; and

5. whether the purchase of property "as is," thereby waiving the warranty of the seller for redhibitory defects, prevents a property owner from evicting a trespasser or fixing the boundaries with a neighboring estate.

II.

**FACTS AND PROCEDURAL HISTORY**

This petitory action concerns the ownership of a strip of land having a width of seven feet, three inches on the west end and seven feet, six inches on the east end and running along the backyard boundary between Lot 229, owned by Ms. Horaist, and Lot 234, owned by the Pratts, in the Live Oak Park Subdivision located in Lafayette, Louisiana. The recorded subdivision plat, prepared on May 22, 1962, shows the dimensions and boundaries of each lot in the subdivision. Ms. Horaist's lot, located at 405 Kim Drive, is depicted as a rectangle with front and rear lines of one hundred feet and parallel sides of equal length of one hundred thirteen feet, eight inches. The Pratts' lot, located at 404 Live Oak Drive, is also depicted as a rectangle with front and rear lines of ninety-five feet and parallel sides of equal length of one hundred fifteen feet. The line dividing the backyards of all the lots between Kim Drive and Live Oak Drive is a straight line that runs the entire length of the block.

Marjorie Boutte Gardner, Ms. Horaist's ancestor-in-title, purchased Lot 229 on June 2, 1965, and the recorded cash sale described the land as follows:

That certain parcel of ground with improvements, being known and designated as:

LOT 229, LIVE OAK PARK SUBDIVSION, EXT. NO. 4,

2

> Parish of Lafayette, Louisiana. Said parcel having a frontage of 100 feet on Kim Drive and having the further dimensions and boundaries as well be shown by plat of survey of said subdivision by Roland W. Laurent dated May 22, 1962, of record in the Clerk of Court's Office for the Parish of Lafayette, Louisiana.

The Pratts purchased Lot 234 pursuant to an act of cash sale dated September 13, 1977, which contained the following property description:

> That certain parcel of ground, together with all improvements thereon, situated in Live Oak Park Subdivision, Extension No. 4 in the Parish of Lafayette, Louisiana, and according to a plat of survey of said subdivision prepared by Colomb and Laurent dated May 22, 1962, and on filed in the office of the Clerk of Court for the Parish of Lafayette, Louisiana, is known and designated as Lot 234 of said subdivision and extension. Said lot having a frontage of 95 feet on Live Oak Drive by a depth between parallel lines of 115 feet and is bounded . . . southwesterly by portions of Lots 230 and 229[.]

At the time the Pratts purchased their property, a chain-link fence had already been erected on Lot 229 approximately seven feet, three inches from the platted boundary line of Lots 234 and 229. A line of crepe myrtles had also been planted on Lot 229 across the remainder of the backyard between the two lots.

In 2011, Mrs. Gardner established the Marjorie Boutte Gardner Trust, donated Lot 229 and the house thereon to the Trust, and moved to live with her sister. The home was leased to tenants until it was sold to Ms. Horaist. In 2012, the Pratts, with Mrs. Gardner's permission, replaced the chain-link fencing with a wooden fence.

On August 28, 2014, Ms. Horaist purchased the home and lot at 405 Kim Drive from the Trust. The act of cash sale described the property as follows:

> That certain lot or parcel of ground, together with all buildings and improvements thereon, and all rights, ways, privileges, servitudes, appurtenances and advantages

3

thereunto belonging and all appurtenances thereof, being known and designated as LOT TWO HUNDRED TWENTY-NINE (229) OF LIVE OAK PARK SUBDIVISION, EXTENSION NUMBER FOUR (4), a subdivision of the Parish of Lafayette, Louisiana, said lot having such shape, form, dimensions, boundaries and measurements as are more fully shown on that certain plat of survey prepared by Roland W. Laurent dated May 22, 1962, attached to the certain Act recorded under Act Number 468752 of the records of the Lafayette Parish Clerk of Court, which plat of survey is made a part hereof by reference thereto.

Before her purchase, Ms. Horaist, a Louisiana-licensed real estate professional, noticed the unusual configuration of the fence line across the backyard, and upon receiving her appraisal, she learned that the Pratts' fence was not on the property line. She also spoke with a friend and surveyor, John Fenstermaker, who measured the lot and advised her the Pratts' fence was definitely located several feet inside Lot 229. Following her purchase of the property, Ms. Horaist approached the Pratts about moving the fence. They refused. She then retained Craig P. Spikes, a registered surveyor, who produced a written survey report and detailed survey plat, which explained the lot dimensions for Lot 229 and confirmed that the fence encroached on Ms. Horaist's property. Still, the Pratts refused to move their fence.

Thereafter, on September 28, 2017, Ms. Horaist filed her petition for petitory action, to fix boundary, for eviction, and damages against the Pratts, seeking to be declared the owner of the disputed strip of land and to order removal of the Pratts' fence. In response thereto, the Pratts filed their reconventional demand on October 31, 2017, seeking to be declared the rightful owners of the disputed land and an injunction preventing Ms. Horaist from interfering with their possession or removing their fence.

4

The matter proceeded to bench trial on September 3, 2019. At trial, Ms. Horaist, in her case in chief, introduced the acts of cash sale for both lots, which consistently described the property line as indicated on the 1962 recorded subdivision plat. The recorded documents established that she holds title to the disputed property and has been paying property taxes on the whole of Lot 229 as described in the subdivision plat. Her mortgage and appraisal documents also reflect the property line as depicted in the 1962 recorded subdivision plat. Ms. Horaist further presented the testimony of a neighbor, Daryn LeBlanc Brammell, who stated that she never saw an encroachment upon Mrs. Gardner's property until the wooden fence was erected in 2012.

The Pratts presented the testimony of several friends and neighbors, who all testified that Mrs. Pratt "planted up" the backyard in the disputed area and that the Pratts had placed swings, boats, and barbeque pits in that area throughout the years. Testimony also revealed that the wooden fence was preceded by a wrought iron fence, and that the Pratts had maintained the yard directly behind the chain-link fence since they moved into their home in 1977, while the Gardners maintained the yard in front of the fence. Pictures taken from the time of their purchase to the present captured the disputed area and the Pratts' use of same over that period of time in an attempt to establish that the Pratts as well as the Gardners treated the visual boundary created by the chain-link fence and the crepe myrtles as the property line. On cross examination, Mrs. Pratt conceded that the pictures taken around 1988 revealed no landscaping anywhere near the fence and that the boats and swings were not stationary, but could and were moved over time.

After taking the matter under advisement, the trial court made its ruling on September 4, 2019. Reasoning that the most telling point was that Ms. Horaist

5

"bought the property 'as is' in a contract that [she] drew up as a real estate agent[,]" the trial court held that the Pratts "exercised possession over the disputed property for the requisite amount of time, thus they have acquired ownership of the seven-foot, three-inch strip of land" and set the boundary along the fence line.

Plaintiff now appeals the trial court's judgment.

III.

**STANDARD OF REVIEW**

"Whether a party has possessed property for purposes of thirty year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong." *Phillips v. Fisher*, 93-928, p. 4 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, 1307, *writ denied*, 94-813 (La. 5/6/94), 637 So.2d 1056. Accordingly, we review the trial court's judgment on acquisitive prescription under the manifest error standard. *Meridian Land & Mineral Corp. v. Bagents*, 211 La. 627, 30 So.2d 563 (1947).

IV.

**LAW AND DISCUSSION**

A "petitory action is one brought by a person who claims the ownership . . . of immovable property . . . against another . . . who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership." La.Code Civ.P. art. 3651. Under La.Code Civ.P. art. 3653:

> To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall:
>
> (1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the

court finds that the defendant is in possession thereof; or

(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof.

When the titles of the parties are traced to a common author, he is presumed to be the previous owner.

Louisiana Civil Code Article 3483 defines just title as "a juridical act, such as a sale, . . . sufficient to transfer ownership" and requires that the act "be written, in valid form, and [recorded]." Under La.Civ.Code art. 3426, anyone "who possesses a part of an immovable by virtue of a title is deemed to have constructive possession within the limits of his title." However, one may acquire possession of property by taking corporeal possession with the intent to possess as owner. La.Civ.Code art. 3424. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. Through the exercise of such intentional, corporeal possession one may over time acquire ownership through acquisitive prescription. La.Civ.Code 3446.

Pursuant to La.Civ.Code art. 3486, ownership of immovable property may be acquired through thirty years acquisitive prescription without good faith or just title. In *Phillips v. Fisher*, 93-928 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, 1307, *writ denied*, 94-813 (La. 5/6/94), 637 So.2d 1056, this court discussed the requirements for proving ownership of immovable property through acquisitive prescription of thirty years:

The party asserting acquisitive prescription bears the burden of proving all the facts that are essential to support it. *Humble v. Dewey*, 215 So.2d 378 (La.App. 3 Cir.1968). A possessor will only be considered as possessing that part of property over which he exercises actual, adverse, corporeal possession which is continuous, uninterrupted,

7

peaceable, public, unequivocal, and within visible bounds. La.C.C. art. 3476; *Suire v. Primeaux*, 363 So.2d 963 (La.App. 3 Cir.), *writ denied*, 365 So.2d 243 (La.1978); *Allen v. Martino*, 529 So.2d 90 (La.App. 1 Cir.1988). He must also prove that he intended to possess as owner, adverse to the actual owner, for the required thirty years. La.C.C. art. 3424.

However, "[t]he exercise of possession over a thing with permission of . . . the owner or possessor is precarious possession." La.Civ.Code art. 3437. Recently, in *Boudreaux v. Cummings*, 14-1499, p. 7 (La. 5/5/15), 167 So.3d 559, 563, our supreme court held that the long-standing, civilian concept of implied permission is still a viable theory relative to precarious possession under our law and that "even in the absence of express permission, tacit permission can be presumed under the limited circumstances where 'indulgence' and acts of 'good neighborhood' are present." The court further cautioned that such a "neighborly act of tolerance cannot be, and is not, the foundation of adverse possession needed for the purposes of acquisitive prescription." *Id.*

Because the evidence of record clearly establishes that Ms. Horaist and her ancestors-in-title had, at all relevant times, title to the disputed land and the Pratts did not, the real issue before this court is whether the trial court manifestly erred in finding the evidence established that the Pratts sufficiently possessed the property for the requisite thirty-year period so to have acquired ownership thereof through acquisitive prescription. As a factual determination, this finding is subject to great deference on review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Nevertheless, as the supreme court enunciated in *Rosell*, 549 So.2d at 844-45 (La.1989) (citations omitted),

Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable

8

fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.

To find manifest error, our review of the entire record must reveal that a reasonable factual basis does not exist for the trial court's finding and that the record establishes that the finding is clearly wrong. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1979). In *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987), our supreme court expounded on our role as a reviewing court upon a finding of manifest error:

> Accordingly, if an appellate court concludes that the trial court's factual findings are clearly wrong, the mere fact that *some* record evidence appears which would furnish a reasonable factual basis for the contested findings does not require affirmance. *Davis v. Owen*, 368 So.2d 1052, 1056 (La.1979). Although appellate courts must accord great weight to the factual findings of the trial judge, these same courts have a duty to determine if the fact finder was justified in his conclusions. *See*, *e.g.*, *Parker v. Rhodes*, 260 So.2d 706, 717 (La.App. 2d Cir.1972). An appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1150 (La.1979).

Our review of the record demonstrates that the trial court manifestly erred in finding the Pratts carried their burden of proving thirty-year adverse possession because no reasonable basis exists on this record for this finding, which is clearly wrong. Rather, the evidence establishes that prior to the building of the wooden fence in 2012, the Pratts did not exercise actual, adverse, corporeal possession of the disputed strip, which was continuous, uninterrupted, peaceable,

public, unequivocal, and within visible bounds with the intention to possess adversely to the Gardners, Ms. Horaist's ancestor-in-title.

In order to establish acquisitive prescription, the Pratts had to prove that they intentionally took, within visible bounds, actual, adverse corporeal possession of the disputed area from the Gardners and then exercised that possession in an uninterrupted, peaceable, public, unequivocal, and continuous manner for more than thirty years. However, there is no dispute that the Pratts did not erect the chain-link fence or plant the crepe myrtles, which they argued, reflected the visual boundary line between the two properties. As such, neither the chain-link fence nor the trees constitute evidence of the Pratts' adverse possession and further cannot be considered as evidence of intentional possession within visible bounds.

Although there is evidence that a wrought iron fence, which preceded the wooden fence, was erected by the Pratts across a portion of Ms. Horaist's lot, the testimony reveals that the wrought iron fence was erected at the most eighteen years before this suit and that the Pratts requested the Gardners' permission to put the wrought iron fence on the unfenced portion of the yard. Mrs. Pratt's own testimony revealed that the Pratts again sought to obtain Mrs. Gardner's permission to remove the chain-link fence in 2012. The repeated requests for permission are not consistent with the Pratts' claim of intentional, adverse possession, but would rather indicate that the Pratts' use of the disputed strip and placement of fencing were at all times with the permission and consent of the Gardners.

While the Pratts presented testimony that Mrs. Pratt gardened in the disputed area and that they had placed swings, boats, and barbeque pits in that area and maintained the yard directly behind the chain-link fence since 1977, the photographic evidence does not depict actual, continuous, and unequivocal

10

possession of the disputed area within visible bounds prior to 2012, much less for thirty years. Rather, the photographs taken in the requisite thirty-year period consistently depict the lack of any landscaping near the chain-link fence or any act of adverse possession that could reasonably be considered continuous, public, unequivocal, and within any visible bounds. The relevant photos only show the disputed area as an open grassy space between the lots.

Further lacking is any objective evidence of the Pratts' intention to possess the disputed strip as owners. Telling are the appraisal records, which establish that Ms. Horaist has paid all property taxes assessed against the disputed strip. Also of significance is the absence of any proof that the Pratts ever paid, were assessed, or sought to be assessed such property taxes or ever insured the land, both of which are indicative of ownership and a landowners' appreciation of same. *See Bagents*, 30 So.2d 563.

Given the photographic evidence and Mrs. Pratt's testimony regarding the Pratts' repeated requests for permission in placing and removing fencing, as well as the lack of evidence establishing the Pratts' actual possession within visible bounds or intent to possess as owners, a reasonable factfinder could not reasonably find the Pratts proved their claim of thirty-year, intentional adverse possession, and such a finding is clearly wrong on this record. Accordingly, we find the trial court manifestly erred in finding the Pratts proved their exercise of possession over the disputed property for the requisite amount of time so to acquire ownership of same through thirty-year acquisitive prescription and then setting the boundary along the fence line.

Because the Pratts failed to prove acquisitive prescription, the boundary between the properties must be fixed according to their titles. La.Civ.Code art. 793.

11

Therefore, in accordance with the provisions of La.Code Civ.P. art. 3693, we, after considering the evidence, render judgment fixing the boundary between Lot 229 and Lot 234 in conformity with the boundaries and measurements set forth in the parties' respective titles and as shown on the subdivision plat, dated May 22, 1962, referred to therein and recorded in the records of the Lafayette Parish Clerk of Court.

V.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is reversed and we hereby render judgment fixing the boundary between Lots 229 and 234 in conformity with the recorded titles and subdivision plat reference therein.

Costs of this appeal are assessed to Defendants/Appellees, Edward A. Pratt and Jean Johnson Pratt.

**REVERSED AND RENDERED.**